22

**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAN 2 8 2010
CLERK'S OFFICE
U. S. DISTRICT COURT
EASTERN MICHIGAN

OLIVER FRENCH, JR.,

          Petitioner,

v.

HUGH WOLFENBARGER,

          Respondent.

_____/

CASE NO. 07-11075
HONORABLE ARTHUR J. TARNOW

## OPINION AND ORDER
## (1) DENYING THE HABEAS CORPUS PETITION
## AND REQUEST FOR COUNSEL,
## (2) GRANTING A CERTIFICATE OF APPEALABILITY, AND
## (3) GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

    Petitioner Oliver French, Jr., has filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254 and a request for appointment of counsel. The habeas petition and amended petition challenge Petitioner's convictions for first-degree murder, second-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony (felony firearm). Having reviewed the pleadings and record, the Court concludes that Petitioner is not entitled to habeas corpus relief. Accordingly, the habeas petition is denied.

## I. Background

    In 1995, a Wayne County Circuit Court jury found Petitioner guilty, but mentally ill, of first-degree murder, second-degree murder, two counts of assault with intent to commit murder, and felony firearm. The Michigan Court of Appeals affirmed Petitioner's convictions, *see People v. French*, No. 186834 (Mich. Ct. App. July 15, 1997), and on September 22, 1998, the Michigan Supreme Court denied leave to appeal, *see People v. French*,

*French v. Wolfenbarger*, No. 07-11075

459 Mich. 865; 584 N.W.2d 924 (1998) (table).  Petitioner subsequently filed a petition for writ

of habeas corpus in federal court.  This Court granted the writ on the ground that Petitioner was

deprived of his right to counsel at a critical stage of trial.  *See French v. Jones*, 114 F. Supp. 2d

638 (E.D. Mich. 2000), *aff'd,* 282 F.3d 893 (6th Cir. 2002), *cert. granted, judgment vacated, and

case remanded for reconsideration*, 535 U.S. 1109 (2002), *aff'd on remand,* 332 F.3d 430 (6th

Cir. 2003), *cert. denied*, 540 U.S. 1018 (2003).

Petitioner was then retried, and on December 16, 2004, he was found guilty of first-

degree murder, Mich. Comp. Laws § 750.316, second-degree murder, Mich. Comp. Laws §

750.317, two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and

felony firearm, Mich. Comp. Laws § 750.227b.  The convictions arose from

> the shooting of several fellow union officials at Ford Motor Company's Dearborn
> Rouge plant on the morning of September 10, 1994.  Defendant was convicted of
> first-degree murder for killing Ronald McTasney, convicted of second-degree
> murder for killing Gregory Couls, and convicted of two counts of assault with
> intent to commit murder for shooting William Bisbing and David Weitz.  At trial,
> defendant did not contest the fact that he shot the men while in a rage, but argued
> that his anger and actions were the product of legal insanity.

*People v. French*, No. 260543, 2006 WL 3039859 (Mich. Ct. App. Oct. 26, 2006).

The trial court sentenced Petitioner to two years in prison for the felony firearm

conviction, followed by concurrent terms of life imprisonment for the first-degree murder

conviction and fifteen to thirty years in prison for the remaining convictions.  Petitioner filed a

motion for new trial in which he challenged the composition of the jury venire.  The trial court

summarily denied his motion at sentencing, and the Michigan Court of Appeals affirmed

Petitioner's convictions in an unpublished *per curiam* opinion.  *See id.*  On February 27, 2007,

2

*French v. Wolfenbarger*, No. 07-11075

the Michigan Supreme Court denied leave to appeal.  *See People v. French*, 477 Mich. 1034; 727

N.W.2d 610 (2007) (table).

Petitioner filed the pending habeas corpus petition on March 13, 2007.  His arguments

are:

    I.        Defendant-appellant was denied his Sixth Amendment right to a fair and properly drawn jury, and his Fourteenth Amendment right to due process, through the inadequate representation of minority venire members and the removal of two African-American members of the panel.

    II.      Defendant-appellant was deprived of his AMS V and XIV rights of due process when the evidence of his insanity was overwhelmingly demonstrated.

    III.    Defendant-appellant was denied his right to confrontation by the admission of hearsay statements by an unproduced witness.  Trial counsel's failure to object did amount to ineffective assistance of counsel.

    IV.    Defendant-appellant was deprived of his AMS V and XIV rights of due process when evidence of prior, uncharged, crimes was admitted into evidence, depriving him of his right of confrontation.

    V.     Defendant-appellant was deprived of his AMS V and XIV rights to due process and his AM VI right to effective assistance when his counsel failed to examine witnesses on the effect of the use of Procardia, failed to investigate the relationship between one jur[or] and the victim's family and failed to voir dire the jury on their racial prejudices.

Respondent urges the Court to deny the petition on grounds that Petitioner's claims are

procedurally defaulted, are not cognizable on habeas review, or lack merit.  Procedural default is

not a jurisdictional limitation.  *Pudelski v. Wilson*, 576 F.3d 595, 606  (6th Cir. 2009) (citing

*Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)).  Since Petitioner's claims lack substantive

*French v. Wolfenbarger*, No. 07-11075

merit, there is no reason to address the possible procedural defaults. The Court will proceed to

address the merits of Petitioner's claims using the following standard of review.

## II. Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual

determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

4

*French v. Wolfenbarger*, No. 07-11075

decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." *Id.* at 411.

## III. Discussion

### A. The Jury Venire and Jury Panel

Petitioner, who is an African American, alleges that he was deprived of his right to a fair

and properly drawn jury because there was an inadequate number of African Americans in the

venire from which his jury was drawn and on the petit jury that decided his case.

#### 1. The Fair-Cross Section Claim

Petitioner alleges that African Americans were under-represented in his jury venire and

that he was denied a jury comprised of a fair cross-section of the community. Petitioner

contends that the under-representation of African Americans in his venire may have been due to

"siphoning off"African Americans from circuit court venires to sit as jurors in state district court.

The result, he claims, is that potential jurors in county-wide circuit court cases are

disproportionately Caucasian. The Michigan Court of Appeals rejected this claim because

Petitioner failed to provide any factual support for his theory. Rather, he relied only on

speculative allegations.

##### a. Legal Framework

The Sixth Amendment to the United States Constitution guarantees defendants in

criminal cases "the right to . . . an impartial jury of the State and district wherein the crime shall

have been committed . . . ." This right

> includes the right to a jury drawn from a "fair cross section of the community."
> *Taylor v. Louisiana*, 419 U.S. 522, 526 & 530, 95 S. Ct. 692, 42 L. Ed. 2d 690

*French v. Wolfenbarger*, No. 07-11075

(1975). As the Supreme Court has emphasized, however, there is "no requirement that petit juries *actually chosen* must mirror the community." *Id.* at 538, 95 S. Ct. 692 (emphasis added). "Defendants are not entitled to a jury of any particular composition, . . . but the jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* (citations omitted).

*United States v. Forest*, 355 F.3d 942, 953 (6th Cir. 2004).

In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

### b. Application

Petitioner has satisfied the first prong of the Duren test, because he is an African American, and African Americans are a distinctive group. *Smith v. Berghuis*, 543 F.3d 326, 336 (6th Cir. 2008) (citing *Peters v. Kiff*, 407 U.S. 493, 503 (1972)), *cert. granted*, __ U.S. __, 130 S. Ct. 48 (2009). Petitioner also has made an arguable showing that African Americans were under-represented in his venire. He alleged in his motion for new trial that 42.2 percent of the population in Wayne County was African-American and only 8 of 62 jurors in his venire (12.9 percent) were African Americans.

Petitioner has not satisfied the third prong of *Duren* by showing that there was systematic exclusion of African Americans in Wayne County venires at the time of his trial. "The Supreme Court has described 'systematic exclusion' to mean exclusion 'inherent in the particular jury-selection process utilized.'" *Smith*, 543 F.3d at 339 (quoting *Duren*, 439 U.S. at 366). A habeas

6

*French v. Wolfenbarger*, No. 07-11075

petitioner need not show intentional discrimination or unequivocal proof of systemic exclusion; "instead, the proof must be sufficient to support an inference that a particular process results in the underrepresentation of a distinctive group." *Id*. at 339, 342-43.

"In *Duren*, the underrepresentation was evident in every weekly venire for a period of nearly a year. Continued underrepresentation made it evident that such underrepresentation was systematic or 'inherent in the particular jury-selection process utilized.'" *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir. 1988) (quoting *Duren*, 439 U.S. at 366). And in *Smith*, the petitioner demonstrated that African Americans were underrepresented on Kent County venire panels by 15 to 18 percent over a period of seventeen months and by 34 percent in the month during which Smith's jury was drawn. In addition, Smith demonstrated a siphoning of African-American jurors by a system that eliminated Grand Rapids citizens who were sent to the lower local district court.

Petitioner alleges that African Americans were routinely siphoned off jury lists to serve in the local district court, but he has not supported this theory with any data or specific information about the typical jury venire in Wayne County. The trial court stated that the jury venire in Petitioner's case was "awfully white" and that approximately ten percent of the venire was African American. (Tr. Dec. 1, 2004, at 87). However, there is no evidence that the exclusion of African Americans from Petitioner's venire was systematic in the months before and after his trial or even in the month during which his jury venire was drawn.

*French v. Wolfenbarger*, No. 07-11075

Petitioner has failed to satisfy at least one of the prongs of the *Duren* test. Therefore, he

has not alleged a *prima facie* violation of the fair cross-section provision of the Sixth

Amendment.

### 2. The *Batson* Claim

Petitioner alleges that the prosecutor made improper use of peremptory challenges to

excuse two prospective African American jurors. The Michigan Court of Appeals stated on

review of this claim that the trial court did not err in determining that the prosecutor dismissed

two African American jurors for credible and race-neutral reasons.

"Under *Batson v. Kentucky*, 476 U.S. 79 (1986), and later decisions building upon

*Batson*, parties are constitutionally prohibited from exercising peremptory challenges to exclude

jurors on the basis of race, ethnicity, or sex." *Rivera v. Illinois*, __ U.S. __, __, 129 S. Ct. 1446,

1451 (2009).

> *Batson* provides a three-step process for a trial court to use in adjudicating a claim
> that a peremptory challenge was based on race:
>
> " 'First, a defendant must make a prima facie showing that a peremptory
> challenge has been exercised on the basis of race[; s]econd, if that showing has
> been made, the prosecution must offer a race-neutral basis for striking the juror in
> question[; and t]hird, in light of the parties' submissions, the trial court must
> determine whether the defendant has shown purposeful discrimination.' " *Miller-
> El v. Dretke, supra*, at 277[, 125 S.Ct. 2317] (THOMAS, J., dissenting) (quoting
> *Miller-El v. Cockrell*, 537 U.S. 322, 328-329[, 123 S.Ct. 1029, 154 L.Ed.2d 931]
> (2003)).

*Snyder v. Louisiana*, 552 U.S. 472, __, 128 S.Ct. 1203, 1207 (2008) (alterations in original).

The Court need not decide whether Petitioner has made a *prima facie* showing under

*Batson* because the prosecutor offered race-neutral reasons for striking the jurors in question and

8

*French v. Wolfenbarger*, No. 07-11075

the trial court found the prosecutor's explanations to be valid. (Tr. Dec. 1, 2004, at 276-77.)

Prospective juror Carol Littlejohn was excused because she had been arrested and detained on a

charge of domestic violence. (Tr. Dec. 1, 2004, at 227-29, 251, 276.) The other juror, Trinisa

Daniels, was excused because her uncle had been arrested for kidnapping and assault. (Tr. Dec.

1, 2004, at 217, 232, 276-77.)

Petitioner alleges that the prosecutor's explanations were inadequate. Petitioner has not

demonstrated that the prosecutor's reasons for eliminating African Americans were a mere

pretext for racial discrimination. Petitioner has failed to show that race was the only factor

distinguishing the struck jurors from those retained. The Court may presume that the facially

valid reasons proffered for the peremptory challenges are true, *Lancaster v. Adams*, 324 F.3d

423, 433 (6th Cir. 2003) (citing *Hernandez v. New York*, 500 U.S. 352, 359-60 (1991)), and great

deference must be given to the trial court's findings on the issue of discriminatory intent.

*Braxton v. Gansheimer*, 561 F.3d 453, 459 (6th Cir. 2009). Petitioner has no right to habeas

relief on the basis of his *Batson* claim, because he has failed to show that the state courts

misapplied *Batson*.

### B. The Weight and Sufficiency of the Evidence

The second habeas claim alleges that evidence of Petitioner's insanity was

overwhelmingly demonstrated and, therefore, the jury's verdict was against the great weight of

the evidence. Petitioner further alleges that the prosecution failed to prove beyond a reasonable

doubt that he was sane during the criminal incident. Petitioner seeks a reversal of his

convictions and a remand to the trial court for entry of a verdict of not guilty by reason of

9

*French v. Wolfenbarger*, No. 07-11075

insanity.  The prosecutor introduced expert evidence rebutting the experts of the Petitioner.

Thus, there was a fact question decided by the jury.  The Michigan Court of Appeals reviewed

this claim on the merits and concluded that the evidence did not preponderate so heavily against

the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand.

### 1. Legal Framework

The contention that a new trial should be granted because the jury's verdict was against

the weight of the evidence "is a state-law argument," and "a federal court is only allowed to

review issues of federal law in a habeas proceeding."  *Nash v. Eberlin*, 258 Fed. Appx. 761, 764

n.4 (6th Cir. 2007).  The only relevant question is "is whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319

(1979) (emphasis in original).

The only factor in dispute here is Petitioner's defense of insanity.  In Michigan, legal

insanity is an affirmative defense "requiring proof that, as a result of mental illness or being

mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity

either to appreciate the nature and quality of the wrongfulness of his or her conduct or to

conform his or her conduct to the requirements of the law.'"  *People v. Shahideh*, 482 Mich.

1156, __; 758 N.W.2d 536, 542 (2008) (Taylor, C.J., concurring) (quoting Mich. Comp. Laws §

768.21a), *cert. denied*, __ U.S. __, 129 S. Ct. 2404 (2009).

### 2. Application

10

*French v. Wolfenbarger*, No. 07-11075

There was conflicting evidence on the issue of insanity. Psychiatrist Rahn Bailey testified for the defense that Petitioner suffered from a substantial disorder of mood and from delusional paranoia, which rendered him insane and incapable of appreciating the wrongfulness of his conduct or of conforming his conduct to the law. (Tr. Dec. 13, 2004, at 165-67, 188, 194-98.) Dr. Bailey's opinion, however, was based on an interview conducted ten years after the crime. (*Id.* at 172.)

Psychologist Patricia Wallace interviewed Petitioner about six months after the crime. She opined on behalf of the defense team that Petitioner had operated under a delusion due to acute stress disorder. She asserted that Petitioner was insane at the time of the shooting and that he was not responsible for his acts because he could not appreciate the wrongfulness of his conduct, nor conform his conduct to the requirements of the law. (Tr. Dec. 14, 2004, at 159-60, 250; Tr. Dec. 15, 2004, at 53.)

The prosecution's expert witness, psychologist Charles R. Clark, interviewed Petitioner about three months after the crime and again in 2004 shortly before his second trial. (Tr. Dec. 15, 2004, at 84, 96-97.) Dr. Clark testified that Petitioner was not delusional or mentally ill at the time of the offense and, therefore, he did not meet the test for legal insanity. (*Id.* at 95, 98, 103.) Dr. Clark also did not see other hallmarks of mental illness in Petitioner, such as hallucinations, disorganized behavior, or formal thought disorders. (*Id.* at 104-07.) Dr. Clark testified that Petitioner's failure to shoot Mr. Bisbing and Mr. Weitz a second time after he realized they were not dead was an indication that he had the ability to control his behavior and knew that what he had done was not right. Similarly, Petitioner's ability to direct someone to

11

*French v. Wolfenbarger*, No. 07-11075

call the police after the shootings was a clear indication that Petitioner knew he had done

something wrong.  As evidence of Petitioner's goal-directed behavior and ability to control

himself, Dr. Clark pointed out that Petitioner shot Greg Couls and then went into another office

and fired more gunshots.  Petitioner did not fire his gun uncontrollably; instead, he fired only

four shots from a six-shot revolver.  (*Id.* at 132-34.)  Dr. Clark determined that Petitioner did not

suffer from a brief psychotic disorder, nor acute stress disorder, and that Dr. Wallace confused

the two disorders when she evaluated Petitioner.  (*Id.* at 154-60.)

    The jury chose to believe Dr. Clark's testimony, and an assessment of the credibility of

the expert witnesses is beyond the scope of this Court's review of Petitioner's sufficiency-of-the-

evidence claim.  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  A rational juror

could have concluded from Dr. Clark's testimony and from other testimony about Petitioner's

conduct before, during, and after the shooting that Petitioner appreciated the wrongfulness of his

conduct and was able to conform his actions to the requirements of the law.  Consequently, there

was sufficient evidence of sanity to support the jury's verdict, and the state court's decision did

not result in a decision that was contrary to, or an unreasonable application of, *Jackson*.

## C.  Petitioner's Prior Threatening Acts

    Petitioner's next two claims concern evidence that he engaged in three other assaultive

acts before the shooting incident in this case.  There was testimony that Petitioner once assaulted

an insurance claims adjuster, shook the service manager of a car dealership, and grabbed a co-

worker by the throat.  Petitioner claims that this evidence violated his right to due process and

*French v. Wolfenbarger*, No. 07-11075

his right to confront the witnesses against him.  He also contends that his attorney was

ineffective for failing to object to the evidence.

The Michigan Court of Appeals held that Petitioner waived his right to object to the

evidence by eliciting extensive testimony about his past.  The Court of Appeals stated that,

because Petitioner acknowledged the incidents when Dr. Clark asked him about them, the

prosecutor did not err in using the incidents as substantive evidence against Petitioner.

### 1. Other Acts Evidence

Evidence of Petitioner's prior assaultive behavior was first elicited by the prosecutor on

cross-examination of psychiatrist Rahn Bailey.  The prosecutor asked Dr. Bailey whether it was

true that Petitioner had a history of reacting to conflict by assaulting people and using violence.

(Tr. Dec. 14, 2004, at 11-15, 19-20.)  Petitioner alleges that the admission of evidence of his

prior conduct was unconstitutional because the prosecutor used the evidence to suggest that he

had a propensity to engage in violent conduct.  This claim lacks merit, because

> [t]here is no clearly established Supreme Court precedent which holds that a state
> violates due process by permitting propensity evidence in the form of other bad
> acts evidence . . . .  While the Supreme Court has addressed whether prior acts
> testimony is permissible under the Federal Rules of Evidence, *see Old Chief v.
> United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston
> v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has
> not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514,

519-23 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008).  As there is no Supreme

Court decision barring the use of propensity evidence on constitutional grounds, the state court's

finding – that the evidence was admissible – was not contrary to Supreme Court precedent.

13

*French v. Wolfenbarger*, No. 07-11075

Even if Petitioner's allegation of error in the application of state law were cognizable on

habeas review, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the

level of federal constitutional claims warranting relief in a habeas action unless the error renders

the proceeding so fundamentally unfair as to deprive the petitioner of due process under the

Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v.*

*McGuire*, 502 U.S. 62, 68-70 (1991)). Evidence that Petitioner was involved in other

threatening behavior before the shooting was not fundamentally unfair because, as the state court

recognized,

> the defense directly facilitated the reliance on hearsay by allowing each of
> defendant's experts to form their professional opinions on the basis of compiled
> documents and other external sources, the admissibility of which was never
> challenged or verified at trial. Defense counsel strategically elicited that his
> experts had considered all the police reports, reports of other mental health
> professionals, and all other relevant data in determining that defendant was insane
> at the time of the shootings.

*French*, 2006 WL 3039859, at *3 (citation omitted).

The Court concludes that Petitioner's right to due process was not violated by evidence

of Petitioner's threatening behavior to other people. And because the admission of the "other

acts" evidence was not unfair, defense counsel was not ineffective for failing to object to the

evidence.

### 2. Alleged Violation of the Right to Confront Witnesses

Petitioner alleges that the admission of hearsay statements by the victims of his prior

assaults violated his right to confront the witnesses against him because the witnesses were not

produced at trial. The alleged violation of the Michigan Rules of Evidence does not state a

14

*French v. Wolfenbarger*, No. 07-11075

cognizable claim on habeas corpus review, because, "[i]n conducting habeas review, a federal

court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

United States." *McGuire,* 502 U.S. at 68.  Federal courts may not grant the writ of habeas

corpus on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).


      Petitioner's constitutional argument is based on *Crawford v. Washington,* 541 U.S. 36

(2004), in which the Supreme Court held that, "[w]here testimonial evidence is at issue . . . the

Sixth Amendment demands what the common law required: unavailability and a prior

opportunity for cross-examination." *Id.* at 68.  "A statement made knowingly to the authorities

that describes criminal activity is almost always testimonial.  A statement made by a person

claiming to be the victim of a crime and describing the crime is usually testimonial, whether

made to the authorities or not."  Richard D. Friedman, *Confrontation: The Search for Basic*

*Principles*, 86 Geo. L.J. 1011, 1042-43 (1998) (quoted with approval in *United States v. Cromer,*

389 F.3d 662, 673 (6th Cir. 2004); *see also United States v. Wright*, 2006 WL 2043090, at *8

(W.D. Mo. 2006) ("A statement given by a victim to an investigating police officer is

testimonial.") (citing *White v. Illinois*, 502 U.S. 346 (1992)).  "The proper inquiry, then, is

whether the declarant intends to bear testimony against the accused.  That intent, in turn, may be

determined by querying whether a reasonable person in the declarant's position would anticipate

his statement being used against the accused in investigating and prosecuting the crime."

*Cromer*, 389 F.3d at 675.  "The mere fact that [the defendant] may have opened the door to the

15

*French v. Wolfenbarger*, No. 07-11075

testimonial, out-of-court statement that violated his confrontation right is not sufficient to erase

that violation." *Id.* at 679.

Whether the evidence in question here was testimonial in nature is not entirely clear from

the record. The prosecution's expert witness, Dr. Charles Clark, testified that he had "reports" of

the incidents at issue (Tr. Dec. 15, 2004, at 141), and at least one of those "reports" (the one

given by the service manager) appears to have been a police report. (*Id.* at 179.)

Respondent claims that *Crawford* does not apply here because no hearsay statements

were introduced in evidence. Petitioner's co-worker, however, reported that he had asked

Petitioner to release him three times before Petitioner relaxed his grip on him. (Tr. Dec. 14,

2004, at 15). And the service manager told the police that Petitioner grabbed him by the shirt

and pushed him, causing him to hit his head on a vehicle behind him. (Tr. Dec. 15, 2004, at 179-

80.) Thus, out-of-court statements were introduced for the truth of the matter, and it appears that

the hearsay statements were testimonial in nature. They apparently were knowingly and

purposely made to the authorities, they accused Petitioner of a crime, and the declarants could

reasonably have anticipated that their statements would be used against Petitioner at a trial.

Because the declarants did not testify at trial and because Petitioner had no prior opportunity to

cross-examine them, there is a substantial basis for Petitioner's claim that his right of

confrontation was violated.

Even assuming, however, that Petitioner's right of confrontation was violated by

testimony about the incidents with the insurance agent, service manager, and co-worker, there

was overwhelming evidence that Petitioner shot the four victims in this case. The only real

16

*French v. Wolfenbarger*, No. 07-11075

dispute was whether Petitioner was insane at the time of the shooting. The resolution of that

issue depended largely on whether the jury believed Petitioner's expert witnesses or the

prosecution's expert witness.

   While it is true that the prosecutor used the three prior assaultive incidents to show that

Petitioner was sane and merely had a tendency to react violently to conflict, the prosecutor

introduced other evidence, besides the three incidents in question, to show that Petitioner tended

to threaten people and react violently when there was conflict. There was evidence that

Petitioner had kicked and damaged an interior door because no one had given him a key to the

office. There was other evidence that he had directed threatening remarks at union officials

during a meeting because he thought they had driven the person whom he supported out of

office. The jury, moreover, could have viewed all this evidence to Petitioner's advantage by

assuming that the incidents were proof of Petitioner's lack of control over his actions. The Court

concludes that, while the introduction of out-of-court statements appears to have violated

Petitioner's right to confront the declarants, the error could not have had a "substantial and

injurious effect or influence" on the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623

(1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)), and was harmless.

### D. Ineffective Assistance of Counsel

   Petitioner's final claim alleges that he was deprived of his constitutional right to effective

assistance of counsel because his trial attorney failed to (1) question witnesses about the side

effects of the drug Procardia, (2) investigate the relationship between a juror and one victim's

family, and (3) question prospective jurors about their racial prejudices. The Michigan Court of

17

*French v. Wolfenbarger*, No. 07-11075

Appeals stated that the failure to question witnesses about the side effects of Procardia was

sound trial strategy and that the other issues were not properly before the Court because

Petitioner failed to present a factual basis for those issues.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984),

"qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-

of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must

demonstrate that his attorney's performance was deficient and that the deficient performance

prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if

"counsel's representation fell below an objective standard of reasonableness" and if "counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Id.* at 687-88.

The prejudice prong of *Strickland* requires Petitioner to demonstrate "that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Id.* at 687. The defendant just show "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"Unless a defendant makes both showings [deficient performance and prejudice], it cannot be

said that the conviction . . . resulted from a breakdown in the adversary process that renders the

result unreliable." *Id.* at 687.        In a federal habeas action, judicial scrutiny of defense

counsel's conduct is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (*per

curiam*). A habeas petitioner must establish a violation of *Strickland's* two-pronged test and

18

*French v. Wolfenbarger*, No. 07-11075

show that the state applied *Strickland* to the facts in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

### 1. Failure to Investigate a Relationship

Petitioner has not shown that there was a relationship between a juror and one of the victim's family. Consequently, the claim that his attorney failed to investigate the relationship has no basis in fact. Defense counsel cannot be faulted for failing to investigate an allegation that has no basis in fact. *See Antwi v. United States*, 349 F. Supp. 2d 663, 676 (S.D. N.Y. 2004) (stating that "defense counsel cannot be faulted for failing to raise objections that have no basis in fact").

### 2. Failure to Question the Venire

Petitioner alleges next that defense counsel was ineffective for failing to question prospective jurors about their racial prejudices. The Court of Appeals for the Sixth Circuit recently had this to say on the issue of an attorney's ineffectiveness during *voir dire*:

> Pursuant to the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed the right to an impartial and unbiased jury. *Morgan v. Illinois*, , 504 U.S. 719, 727, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). "Among the most essential responsibilities of defense counsel is to protect his client's constitutional right to a fair and impartial jury by using voir dire to identify and ferret out jurors who are biased against the defense." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001); see also *United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973) ("The primary purpose of the voir dire of jurors is to make possible the empaneling of an impartial jury through questions that permit the intelligent exercise of challenges by counsel").
>
> Counsel, however, is granted deference when conducting voir dire. *Hughes* [*v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)]. "An attorney's actions during voir dire are considered to be matters of trial strategy. . . . A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial

19

*French v. Wolfenbarger*, No. 07-11075

with obvious unfairness." *Id.* Despite this strong presumption that counsel's decisions are based on sound trial strategy, it is insufficient for counsel to simply articulate a reason for an omission or act alleged to constitute ineffective assistance of counsel. "The trial strategy itself must be objectively reasonable." *Miller*, 269 F.3d at 616 (citing *Strickland*, 466 U.S. at 681, 104 S. Ct. 2052).

*Holder v. Palmer*, 588 F.3d 328, 338 (6th Cir. 2009). "Few decisions at trial are as subjective or prone to individual attorney strategy as juror *voir dire*, where decisions are often made on the basis of intangible factors." *Miller v. Francis*, 269 F.3d 609, 620 (6th Cir. 2001).

The primary focus of Petitioner's trial was union politics and whether Petitioner was insane at the time of the shootings. The shootings appear to have been motivated primarily by union politics, not race, even though Petitioner is an African-American, and his victims were Caucasians. There were racial overtones in the case, but the prosecutor's theory was that Petitioner was angry, frustrated, and fearful because he and other men had lost influence within the union and a competing group of union officials had assumed power. In light of the prosecutor's theory and the overwhelming evidence that Petitioner shot four men, defense counsel's strategy of focusing on the insanity defense during *voir dire* was objectively reasonable.

The Court notes, moreover, that defense counsel did challenge the composition of the jury array and the fact that the prosecutor used peremptory challenges to dismiss two African American jurors. (Tr. Dec. 1, 2004, at 88, 275.) The Court concludes that defense counsel's decision not to question the prospective jurors about race did not permeate the entire trial with obvious unfairness.

### 3. Failure to Question Witnesses about Procardia

20

*French v. Wolfenbarger*, No. 07-11075

The remaining question is whether defense counsel was ineffective for failing to elicit testimony that paranoia is a side effect of the medication Procardia. Petitioner was taking Procardia for hypertension at the time of the shootings (Tr. Dec. 13, 2004, at 247), and one of the mental health professionals who testified in Petitioner's behalf at the first trial apparently thought the crimes were the result of Petitioner's use of Procardia. (Tr. Dec. 14, 2004, at 54.)

Dr. Rahn Bailey, however, testified as an expert witness for the defense at Petitioner's second trial, and he did not discuss the medication in his report about Petitioner. Dr. Bailey testified that "what we know about Procardia is a lot different now" than it was ten years earlier when the crimes were committed. (*Id.*) The implication was that Dr. Bailey disagreed with the former doctor's theory on Procardia. Petitioner himself admits that paranoia is a *rare* side effect of the drug. *See* amended petition at 48. The Court therefore concludes that defense counsel used prudent trial strategy by abandoning the Procardia theory and by declining to question witnesses about the side effects of Procardia.

## IV.  Conclusion

The state appellate court's rejection of Petitioner's claims did not result in a decision that was an unreasonable application of the facts, contrary to clearly established federal law, or an unreasonable application of clearly established law as determined by Supreme Court. Accordingly, the habeas petition and request for appointment of counsel [Dkt. #1] and the amended petition [Dkt. #12] are **DENIED**.

21

*French v. Wolfenbarger*, No. 07-11075

Reasonable jurists, however, could debate the Court's resolution of Petitioner's claims.

Accordingly, the Court **GRANTS** a certificate of appealability on all Petitioner's claims. *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may proceed *in forma pauperis* on appeal.


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  January 29, 2010


I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on
January 29, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary